BENJAMIN F. BURGESS & others *vs.* ALLIANCE INSURANCE COMPANY.

SAME *vs.* NEW ENGLAND MUTUAL MARINE INSURANCE COMPANY.

If a partial loss occurs upon a policy, for a sum expressed in dollars, made here, upon property situated in a foreign country, the rule for estimating damages is to determine the loss at the place where it occurred, in the currency of that country, and then to find the equivalent in the country where suit is brought, by determining the actual intrinsic value of the currency of that country, as compared with the currency of the other; and it is immaterial, in reference to this, that the policy contains a provision that in case of loss the company shall have the right to replace the articles lost or damaged with others of the same kind and equal goodness.

An open policy of insurance upon merchandise will not cover articles kept wholly or partially for use in and about a building, but only articles kept for sale; but an open policy upon " property " contained in specified buildings will cover articles kept for use as well as those kept for sale.

Two actions of contract upon policies of insurance. The first action was upon an open fire policy issued to the plaintiffs, for whom it concerns, by the Alliance Insurance Company, for " any sum not exceeding fifteen thousand dollars in any one place in any one time on merchandise in the buildings and on the wharf occupied by H. R. Bishop, located in Cabarien, Cuba, indorsements to be reported to this company at the close of each month. Liberty to have other insurance." This policy was indorsed as follows : " 1864 Jan. 1. 1 mo. to Feb. 1, 64. $15,000 ¼ 37.50."

The second action was upon two open fire policies issued to the plaintiffs, for whom it concerns, by the New England Mutual Marine Insurance Company, one of which was for ten thousand dollars, " on property contained in buildings, sheds, yards and wharf in the ports of Cienfuegos and Cabarien, Cuba. Liberty

of other insurance;" and the other was for five thousand dol-
lars on the same subject. The first of these policies was indorsed
as follows:

| Date. | Amount. | Rate. | Premium. | Situation. | Time. |
|---|---|---|---|---|---|
| 1864, Jan. 5. | 10,000. | $\frac{1}{4}$ | 25,00. | Cabarien. | 1 mo. to Feb. 5, '64. |

The second was similarly indorsed for $5000, for one month
from December 28th 1863. All of the policies contained the
following provision: "And the assured further covenants and
agrees that, in case of loss or damage, the said company shall
have the right to replace the articles lost or damaged with others
of the same kind and of equal goodness, at any time after sixty
days after notice of any loss."

The cases were reserved in this court upon the following
agreed statement of facts:

" The defendants made to the plaintiffs the policies declared
on, and a part of the property mentioned in the policies was
destroyed by fire at Cabarien on the ninth day of January 1864,
and the defendants received due notice and proof of the loss.
At the time of the insurance and of the loss, and at the time
when the loss became payable, the value, at said Cabarien, of
the property destroyed was twenty thousand seven hundred
and twenty-nine and $\frac{64}{100}$ dollars in the currency at Cabarien,
and the currency of Cabarien was gold and silver; that is to
say, gold doubloons and Spanish dollars. If with the coined
dollars of the United States a purchase of exchange on Caba-
rien could be made here at par, the dollar of the United States
would be treated as equal to the dollar of Cuba.

" The schedule hereto annexed contains a true statement of
the property destroyed, and the value of each item thereof at
said Cabarien, in gold and silver as aforesaid; and all of said
property was covered by said policies and the indorsements
thereon, provided said policies attached, except the items referred
to in the statement signed by H. R. Bishop, hereto annexed;
and in regard to said items the question is left to the determina-
tion of the court upon said statement, whether the species of
property as described in said statement is covered by the terms
of said policies.

" The premiums on said policies were paid at Boston by the plaintiffs in paper currency of the United States.

" H. R. Bishop, a resident of said Cabarien, was owner of the property destroyed, and, if parol evidence of the fact would be admissible, the plaintiffs effected said insurance as the agents and in behalf of said Bishop; and the plaintiffs were duly authorized to effect the same, but such ownership was not communicated to the defendants or known by them.

" The plaintiffs claim that the judgments here should be for an amount which would make good to said Bishop at said Cabarien his said loss; and that, to effect this, judgments should be rendered for a sum which would have purchased a remittance payable in Cuba to the amount of the plaintiffs' loss at the time when the same was due and payable.

" The defendants, among other things, claim that by the terms of the policies they were, if liable at all, only liable to pay the amount of the loss at Boston, without the addition of any premium of exchange.

" If upon the foregoing facts the plaintiffs are entitled to recover, the causes are to be sent to an assessor to ascertain and make up the amount of the judgments, under the direction of the court; otherwise the plaintiffs to be nonsuit."

The schedule annexed contained items, chiefly of sugar and molasses, amounting in all to $20,729.54.

The statement of H. R. Bishop as to certain items in the schedule, concerning which special questions were raised, was as follows:

" The mast and boom had been taken by me from the lighter ' Don Quixote' some few months prior to the fire, and were stored for sale, and were not in use or kept for use by me.

" The two large molasses-pumps were not attached to the buildings, but could be and were transferred to different parts of the same building and of different buildings as I had occasion to use them.

" The four water tanks were not attached to the buildings, but were round and movable, although very large; they had been removed from another place to the place where they were standing when burnt but a few months prior to the fire.

" The tanks were kept by us for the purpose of catching water to sell. Of course I used such of the water as I needed for my own use, but the greater portion I sold. There is no drinking water at Cabarien except rain water, which is caught in this way and sold to the inhabitants and the shipping; principally to the latter.

" The two large cars were used by me on a railroad track, connecting my warehouses with my wharf; they were platform cars and used for hauling freight. I had then offered them for sale, as I had other cars more suitable for my purpose on their way to me. The other car was a small car not used by me, as it was too small for my track, and I had it for sale.

" The four large street lanterns were hung on a hook attached to pulleys, so that they could be hoisted and lowered for cleaning and filling.

" The stationery was papers, pens, ink and memorandum books, all of which were new and unused.

" The custom-house book is a printed book of the rates of customs."

*S. Bartlett & F. Bartlett,* for the plaintiffs. The general question in these causes is, whether under a contract of indemnity made at one place, but attaching to property the *situs* of which, as fixed by the contract, is and is to remain in a foreign country, the assured in case of partial loss is limited by law to a recovery, at the place of the contract, of a sum less than one which will replace the portion of the property destroyed. The effects of a depreciated currency and of legal tender acts are not involved in the principle to be discussed. The same question would have arisen if this were now a gold-paying country. If the assured has by law, under the contract, a right to have the property or its value restored to him, at its *situs*, as fixed by the policy, then judgment will be rendered for such sum as will purchase, at the place of the contract, the means of restoration, so that only the ordinary difficulty which affects the question of damages in all cases of contract exists, namely, whether they are to be assessed in coin or currency. If the plaintiffs' claim to indemnity upon the principles above stated shall be rejected

the only result will be that his indemnity will be still further reduced by its being paid in a depreciated currency.

The contract of insurance is uniformly declared to be one of indemnity, and it is to be liberally construed to effect its purpose. 1 Phil. Ins. § 124. 2 Ib. § 1481. The fact that the premium was paid in currency is immaterial. The use of the word " dollars " in the policy can have no tendency to show that the parties understood that indemnity should be limited to payment here of our dollars, by tale equal to the number of dollars of Cuba which would there repair the plaintiffs' loss.

In these policies, the clause authorizing the companies to replace the articles lost is most important. This is a concession to the insurers. It is clear, therefore, that without such concession they were bound to do something not less beneficial. The insurers thus declare that they are to replace the property, or furnish the insured with an equivalent.

The principles that govern marine insurance, as to the extent of indemnity, are applicable to the present question. In case of insurance here, by an open policy, on goods purchased at and shipped from a foreign port, the insured in case of loss is to be indemnified by payment here of such sum as is equal to the market value of the goods at the time and place of shipment, with the addition of the exchange at the market rate when the risk commenced. 2 Phil. Ins. §§ 1230, 1231. So in an open policy on a ship, if a partial loss occurs and expenditure to repair injuries is made in a foreign country, the place of the loss is the place of indemnity, and exchange is uniformly added to the expenditure. The same principle is applied in adjusting claims for loss by general average. 2 Phil. Ins. §§ 1359, 1427. Stevens & Benecke on Average, 79. These doctrines seem decisive of the principle that, the place at which a loss is to be estimated being fixed, if that place be a foreign country, exchange is to be added, to enable the insured to replace himself in the position he was in when the risk attached.

The term " merchandise," in the policy of the Alliance Company, covers the articles mentioned in the statement of Bishop; 2 Parsons Mar. Law, 200 ; or, if not, they are certainly covered

by the term "property" in the other policies. 1 Phil. Ins. § 455 *Whiton* v. *Old Colony Ins. Co.* 2 Met. 1.

*M. Andros,* for the Alliance Insurance Company.

*H. C. Hutchins,* for the New England Mutual Marine Insurance Company.

Hoar, J. The court are of opinion that only the mast and boom, stored for sale, and the small railroad car, of the articles named in the statement of Bishop, can be considered as merchandise, within the meaning of the policy of the Alliance Insurance Company, and that they are to be so regarded. The word "property" has a much more extended meaning, and that being the word used in the policy of the New England Mutual Marine Insurance Company, we have no doubt that it includes all the articles enumerated in the statement.

The principal question is common to both cases, and it is this: whether, in case of a partial loss of property situated in another country, and insured here, in computing the sum to be recovered, anything is to be allowed for the expense of transmitting to that country the sum of money, which, paid there, would furnish an equivalent for the value of the property destroyed by fire? And we are of opinion that no such allowance can legally be made. In other words, nothing can be added for the cost of exchange in transmitting the funds which are of intrinsically equal value in this country with those which represent the pecuniary measure of the loss in the country where it occurred.

The cases of *Adams* v. *Cordis,* 8 Pick. 260; *Alcock* v. *Hopkins,* 6 Cush. 484; *Lodge* v. *Spooner,* 8 Gray, 166; and the recent case of *Hussey* v. *Farlow,* 9 Allen, 263, are decisive as authorities upon the point in this commonwealth, and we are satisfied with the correctness of the principle in its application to the cases now before us.

The argument for the plaintiffs is, that the contract of insurance is a contract of indemnity; and that an indemnity for the loss recovered here is such a sum of money as would purchase a remittance, which, when collected at the place where the loss occurred, would be an exact equivalent there to the value of the property destroyed. And it is urged that this view is sustained

by the clause in the policy which gives the insurer the right to replace the property destroyed by other property of like kind and equal value.

The latter provision is made for the benefit of the insurer, and serves to protect him from an over valuation. If he elects to avail himself of it, he must of course replace the property at the place of the loss. But in that case he may avail himself of means which he may have there, or which he may procure from any other quarter. The expense he incurs has no necessary relation to the rate of exchange between the country of the loss and any other country in particular. On the other hand, if he does not elect to repair the loss, the obligation to pay the value of the property in money is not confined in its operation to any country. It may be enforced in any country in which the debtor may be found, or wherever jurisdiction can be obtained of the cause or the parties. There is nothing local about it. The debtor must pay where he is found or can be sued, and the creditor may not wish to transfer the money to the place where the cause of action accrued; certainly he is under no obligation to do so.

In the same country, the matter is very plain. If a man loses by fire property in New Orleans valued there at $1000, would it be contended that he would recover a different sum if he sued his insurer in New Orleans, or in Mobile, or St. Louis, or Boston? The only difference in principle between such an example and a loss in a foreign country would seem to be, that the loss is estimated in a different currency from that in which judgment is recovered in the latter case, and in the same currency in the former. Suppose the insurance companies, immediately after the loss occurred in Cuba, had ascertained its amount in Spanish dollars, and had given a promissory note for that number of dollars, without specifying the place of payment, would there be any allowance made for exchange if the note were afterward sued in another country?

It is true that the object of a policy of insurance is indemnity to the insured; but the standard of value used in estimating the amount of the loss may not under all circumstances produce the

result of giving an exact indemnity at the place where a judgment is recovered upon the policy. The best practical rule for indemnity seems to us to be, to estimate the loss at the place where it occurred in the currency of that country, and then to find the equivalent in the country where suit is brought by determining the actual intrinsic value of the currency of that country as compared with that of the other, thus computing the value according to the real par of exchange. If the market value of exchange be regarded, the amount to be paid to constitute an indemnity would depend on the rate of exchange when the debt should finally be collected on the execution. .

We are aware that the doctrines of this court on this subject are not uniformly approved by text writers, or by other courts, and that a considerable diversity of opinion has prevailed upon it. But it has been sanctioned by those whose opinion is entitled to respect, and best accords with our own judgment of the law. 1 Arnould on Ins. 330. Marsh. Ins. (4th ed.) 502–3, note k. The cases will therefore be sent to an assessor, according to the agreement of the parties, to fix the sums which the plaintiffs shall recover in pursuance of the views of the court above expressed.